26546.   SUMMER-MINTER & ASSOCIATES, INC. et al. v. GIORDANO et al.

ARGUED JUNE 14, 1971—DECIDED SEPTEMBER 27, 1971.

*Curtis R. Richardson,* for appellants.
*Peek, Whaley, & Haldi, Glenville Haldi, Haas, Holland, Freeman, Levison & Gibert, Hugh W. Gibert, Andrew C. Hall, Huie & Harland, Harry L. Cashin, Jr.,* for appellees.

ALMAND, Chief Justice. In February, 1970, Joseph and Sam Giordano filed their complaint against H. F. Stubbs, seeking to annul and set aside a foreclosure sale, under power given in a security deed, of a described tract of land in Gwinnett County, and for a money judgment against Stubbs.

In this complaint it was alleged that one Donald E. Gaston, in November, 1963, executed to Stubbs a deed to secure debt in the sum of $30,000 to a described tract of land; that the Giordanos were the grantees of a deed to secure debt in the amount of $163,500 in the described property, wherein the defendant's deed is superior to the Giordanos' deed; that the fair market value of the property was $250,000; that Stubbs, proceeding under the power of sale in his security deed foreclosed and at the sale on February 3, 1970, purchased the property for the sum of $35,000; that the Giordanos were unaware of the sale; that such sum was grossly inadequate; that it was a fraudulent sale, and, that the plaintiffs were ready, willing and able to pay any and all sums due the defendant.

On the presentation of the complaint a temporary injunction was granted.

On February 24, 1970, the plaintiffs amended their complaint and named Bob E. L. Pope as a party defendant. In substance the amendment alleged that the Giordanos purchased the subject property in 1966 and later sold the property to Pope who assumed the debt to Stubbs and executed a second mortgage to the Giordanos in the sum of $163,500. The amendment further alleged that the Giordanos received notice by letter from Stubbs on November 1, 1969, indicating an amount of principal and interest which was due and payable to the Trust Company of Georgia.

The plaintiffs again amended their complaint on August 18, 1970, in which they added Summer-Minter & Associates, Inc., and Hugh Summer as defendants. In substance the amendment alleged: that at all times pertinent a conspiracy existed among all of the defendants for the purpose of defrauding the plaintiffs of their interest in the land involved in the present action; that at the time Pope bought the tract from the plaintiffs he intended to let the debt to the plaintiffs go into default so that Stubbs could foreclose and "cut off" the second mortgage; that Stubbs failed to advise plaintiffs of Pope's default; that the sale of the land by plaintiffs to Pope was arranged through Summer-Minter

& Associates, Inc., which collected a real estate commission on the sale; and that Hugh Summer as president of the corporation had personal knowledge of the default and was under a duty to inform the plaintiffs of such fact, but that he concealed the information from the plaintiffs.

The additional prayers were: if the foreclosure sale be not set aside, in the alternative the plaintiffs have judgment against all of the defendants, jointly and severally, in certain specified sums for actual and punitive damages and attorneys fees.

In their answer and counterclaim, Summer-Minter & Associates, Inc., and Hugh Summer gave as their defense that the complaint failed to state a claim against them, and they denied the material allegations of the complaint. In their counterclaim, they asked for a judgment for money damages on the ground that the plaintiffs acted maliciously and without probable cause in joining them in these proceedings.

Summer-Minter & Associates, Inc. and Hugh Summer filed their motion for a summary judgment in their favor and against the plaintiffs as to the relief sought in the plaintiffs' complaint.

Under the pleadings, interrogatories and answers in the case, the court upon consideration denied this motion and certified the order as being subject to immediate review. The appellants filed their notice of appeal, and error is assigned on this order.

■ A civil conspiracy has been defined as a combination between two or more persons to do some unlawful act which is a tort or else to do some lawful act by methods which constitute a tort. The gist of the action, if a cause of action exists, is not the conspiracy alleged, but the tort committed against the plaintiffs resulting in damage. *Vandhitch v. Alverson,* 52 Ga. App. 308 (1) (183 SE 105); 16 Am-Jur2d 149, Conspiracy, § 44.

■ Before the trial judge on the motion for summary judgment were the pleadings of all the parties, the depositions and the interrogatories of the parties. The only rela-

tionship that ever existed between the Giordanos and the defendants, Summer-Minter & Associates and Hugh Summer, was that of a seller of property and real estate broker. In April, 1969, the defendants were the procuring agents in the sale of the subject property by the Giordanos to Pope, whereby the purchaser paid the brokerage commission.

The undisputed evidence is that after the brokerage contract had been fully executed neither Summer-Minter nor Hugh Summer had any dealings or agreement with the Giordanos about the subject property or any other dealings, or acted as agent for the plaintiffs in any manner. At the time Stubbs foreclosed the security deed these parties were not the agents of the plaintiffs and occupied no confidential relationship with them and owed no duty towards them. *Atlanta Savings Bank v. Spencer,* 107 Ga. 629 (5) (33 SE 878); *Sullivan v. Federal Farm Mortgage Corp.,* 65 Ga. App. 193 (15 SE2d 551); 3 AmJur2d 442, Agency, § 37.

■ The undisputed evidence is that Stubbs never had any dealings with Summer-Minter except that he got the firm to try to locate an industrial site for Atlanta Dairies of which Stubbs was president, and that Hugh Summer tried to get certain property zoned for Atlanta Dairies. Hicks, an employee of Summer-Minter stated to Summer that Stubbs had a first mortgage on the subject property and that Hicks had heard that the debt was in default. The first time Hugh Summer knew of the foreclosure was on the day of the sale and this information came from another real estate broker. Summer never had any conversation with Stubbs or anyone else about the foreclosure or the cutting off of Giordano's second mortgage. There was no evidence that either Hugh Summer or anyone representing Summer-Minter was present at the foreclosure sale.

The undisputed evidence as to Pope is that he did not know Stubbs and never had any dealings with him. As to Stubbs, that he did not know Frank Hicks, employee of Summer-Minter; that he never discussed the default in the payment of the secured debt or its foreclosure.

The appellees rely on two affidavits of Frank Hicks intro-

duced by them to support their claim that there is an issue of fact as to a conspiracy. Hicks testified that he was employed by Summer-Minter and that: "On or about December 9, 1969, I learned that the note was in default, Bob E. L. Pope not having made the payment required on November 14, 1969. On December 9, 1969, I mentioned this default to Hugh Summer of Summer-Minter & Associates. Mr. Summer advised me that he would take up the matter with Glenville Haldi, attorney for Pope. He advised me that I need not do anything. I then asked him what would happen to the Giordanos' interest and he told me that the Giordanos would be all right because the land would revert to them in event of a foreclosure by Mr. Stubbs. As a result of this, I did not bother to mention the default to Giordano." "In or about April, 1969, I came to work for Summer-Minter & Associates. At that time Bob E. L. Pope was occupying an office in the offices of Summer-Minter & Associates on 2764 Peachtree Road N.W., Atlanta, Georgia.

"Hugh Summer told me that he has done business in the past with H. F. Stubbs and they are working on some kind of deal together at the present time. Stubbs told me that he had been in the office at Summer-Minter & Associates on or about December 8, 1969." This evidence does not support or raise any issue as to a conspiracy. Even if it be conceded that Summer's purpose was to harm the Giordanos it was his act alone, and one person cannot be guilty of a conspiracy.

We have carefully reviewed all the evidence and there is not a microscopic scintilla of evidence that there existed a conspiracy between the defendants as to the foreclosure of the subject property and its purchase by Stubbs for the purpose of injury or damage to the appellees. There being no material issue as to the existence or non-existence of a conspiracy, the court erred in denying the appellants' motion for a summary judgment on the appellees' complaint against the appellants.

*Judgment reversed. All the Justices concur.*