47699. GIORDANO et al. v. STUBBS et al.

EVANS, Judge. Plaintiffs originally sued defendants for equitable relief and for general and punitive damages, alleging that defendants conspired to defraud plaintiffs. Defendants filed a motion for summary judgment, which the lower court denied, and on appeal to the Supreme Court of Georgia a reversal was entered, said court holding that there was no evidence of a conspiracy between the defendants, and therefore, there was no issue presented as to the existence or nonexistence of a conspiracy. *Summer-Minter & Assoc. v. Giordano,* 228 Ga. 86, 90 (184 SE2d 152). Before judgment was entered on the remittitur in the trial court, plaintiffs amended their complaint by striking the original complaint and all amendments and substituting a new complaint, in which conspiracy was not alleged or even mentioned and eliminating Pope and Stubbs as defendants; and claiming a right of action against remaining defendants for damages for interference with a rescue as to property and damages for injurious falsehood. Defendants filed a motion for judgment on the pleadings, contending that the earlier judgment by the Supreme Court of Georgia, which reversed the Superior Court of DeKalb County, had adjudicated that defendants were

entitled to summary judgment, and that said judgment was res judicata and constituted an estoppel by judgment.

The superior court entered an order sustaining the motion for judgment on pleadings "on all grounds therein" (which grounds were res judicata and estoppel by judgment); and the plaintiffs appeal to this court. The question now presented to this court is whether the judgment of the Supreme Court, ruling that there was no conspiracy proven or presented in the original case at the time of motion for summary judgment by defendants, works an estoppel against plaintiffs to amend their complaint prior to entry of judgment on the remittitur, and estops them from substituting a case on a cause of action without reference to conspiracy. *Held:*

1. If a demurrer is *sustained* by the trial court, and later the appellate court affirms that judgment, no amendment to petition is allowable, as the case terminated by the judgment in the lower court. *City of Rome v. Sudduth,* 121 Ga. 420 (1) (49 SE 300); *Central R. & Bkg. Co. v. Patterson,* 87 Ga. 646 (13 SE 525).

2. But the rule is quite different where a demurrer is *overruled* by the trial court, and such judgment is later reversed by the appellate court, because the case remains pending in the lower court and an amendment may be allowed and filed in the lower court before remittitur is made the judgment of the trial court. Even though no cause of action was originally set forth, the amendment may cure this defect. *Setzers Super Stores v. Higgins,* 104 Ga. App. 116, 122 (121 SE2d 305); *Jackson v. Security Ins. Co.,* 177 Ga. 631 (170 SE 787); *Ritzert v. Bulloch County,* 100 Ga. App. 686 (1) (112 SE2d 235); *Ware v. Martin,* 208 Ga. 330 (3) (66 SE2d 737); *Welsch v. Wilson,* 218 Ga. 843 (131 SE2d 194); *Cotton States Mut. Ins. Co. v. Tiller,* 116 Ga. App. 275 (157 SE2d 57).

3. Nor does the Appellate Practice Act change the above rule. See *Smith v. Smith,* 119 Ga. App. 619 (168 SE2d 609) (1969). The case of *City Stores Co. v. Henderson,* 116 Ga. App. 114, 117 (156 SE2d 818) states: "Since the Appellate Practice Act became effective this rule has been recognized in *Davis House v. Mink,* 115 Ga. App. 264 (154 SE2d 661)." In *Waldrop v. Bettis,* 223 Ga. 715, 717 (157 SE2d 870) the question arose as to whether, after notice of appeal and costs of court paid, an amendment could be filed, and the court held: "The petitioners had a right to amend the petition *at any time.*" (Emphasis supplied.) The foregoing authorities clearly demonstrate that both before and after the Appellate Practice Act, and after a case has been appealed, and

even after adverse judgment rendered in appellate court, a party may amend his petition in the trial court and set up a cause of action although he had not alleged a good cause of action in the first instance.

In *Sammons v. Tingle,* 216 Ga. 814 (120 SE2d 124), the trial court overruled a general demurrer to the complaint, and this ruling was reversed by the Supreme Court on appeal. See *Sammons v. Tingle,* 216 Ga. 509 (117 SE2d 531). But plaintiff amended his complaint before the filing of the remittitur, and alleged a different case. In *Sammons v. Tingle,* 216 Ga. 814, supra, at bottom of page 815, the Supreme Court holds: "The facts in the two records make, therefore, different cases, *and a decision by this court, upon one state of facts is not binding upon another.* Therefore, the court did not err in disallowing the plea of res judicata. *Bass Dry Goods Co. v. Granite City Mfg. Co.,* 116 Ga. 176 (3) (42 SE 415)." (Emphasis supplied.)

4. A judgment on motion for summary judgment does not establish the law of the case as to whether a cause of action is set forth in the petition. *Sanders v. Alpha Gamma Alumni Chapter,* 107 Ga. App. 403 (130 SE2d 255). The above authority also holds (p. 405), that a case does not "go to trial" when a party moves for a summary judgment, and a hearing is conducted and decision rendered thereon. In *Grizzard v. Grizzard,* 224 Ga. 42, 43 (159 SE2d 400) it is held: "A ruling on motion for summary judgment of the defendant is a determination only of the right of defendant to a judgment in his favor on the grounds of his motion, *and does not determine the sufficiency of the petition to state a cause of action.*" (Emphasis supplied.)

5. An appeal as to the denial of a motion for summary judgment cannot be taken unless the trial judge certifies it to be an appealable case. Code Ann. § 81A-156 (h) (§ 56 CPA; Ga. L. 1966, pp. 609, 660; 1967, pp. 226, 238). The statute recognizes that the denial of a motion for summary judgment is not a final judgment and that the case remains pending in the trial court pending appeal.

6. A judgment on a motion for summary judgment is not conclusive except as to the questions made and decided in that particular motion. A second motion for summary judgment may be filed, raising new questions which were not filed in the first one. And in *Suggs v. Brotherhood,* 106 Ga. App. 563, 564 (127 SE2d 827) it is held: "The overruling of defendants' first motions for summary judgments was not a bar to their second motions for the reason

that the first motions did not require a decision as to the applicability of article 30 of the employment agreement since that defense was not properly pleaded, whereas, the second motions did raise this issue. 'Where the second motion for summary judgment is based on matters not involved in the decision on the first motion the "law of the case" is not involved.'" Again, in *Stein Steel &c. Co. v. Briggs Mfg. Co.,* 110 Ga. App. 489 (3) (138 SE2d 910), it is held: "It is within the discretion of the trial judge as to whether he will entertain a second motion for summary judgment, the first having been denied, *particularly where there has been a material change in the status of the pleadings* after denial of the first motion." (Emphasis supplied.) In *Sams v. McDonald,* 119 Ga. App. 547 (167 SE2d 668), this court said that ordinarily a party is required to present his strongest case for summary judgment in the first instance, but he will not be prohibited from filing a second motion for summary judgment.

7. The rule as to what a complaint may contain has been considerably relaxed by the new Civil Practice Act. Now a complaint may contain as many separate claims against the defendants as one may have, regardless of inconsistency. They may be based on legal grounds, and equitable grounds, and may arise out of tort, and also out of contract. Misjoinder finds no favor here. See Code Ann. § 81A-108 (e, 2) (Ga. L. 1966, pp. 609, 619; 1967, pp. 226, 230).

8. The trial court erred in sustaining the defendant's motion for judgment on the pleadings. Said motion was based on estoppel by judgment and res judicata. But the Supreme Court had reversed the lower court for the sole reason that the plaintiff had not proven or presented an issue of conspiracy. Before this judgment could be given efficacy—before the remittitur reached the lower court—plaintiffs amended their complaint, eliminating conspiracy, and presented a new case. No contention was made by defendants that the amended complaint failed to set forth a good cause of action. The sole attack made is estoppel by judgment and res judicata. The trial court should have overruled defendant's motions and its judgment in granting same is hereby reversed.

*Judgment reversed. Bell, C. J., Deen, Quillian and Clark, JJ., concur. Pannell, J., concurs specially. Hall, P. J., Eberhardt, P. J., and Stolz, J., dissent.*

ARGUED JANUARY 4, 1973 — DECIDED MAY 29, 1973 —

*Haas, Holland, Levison & Gibert, Hugh W. Gibert,* for appellants.
*Manning, Read & Richardson, Curtis R. Richardson,* for appellees.

PANNELL, Judge, concurring specially. I concur in the judgment of reversal.

1. On the right to amend. The dissent of Judge Hall to the judgment of reversal is based on what is referred to as an "axiomatic" rule of law, that an amendment to pleadings cannot be made in the lower court, where on appeal the appellate court holds that the trial court erred in *refusing* to grant a summary judgment to the defendant, and where the amendment offered to the plaintiff's pleadings is offered prior to the time the remittitur of the appellate court becomes the judgment of the lower court. I find no authority for this statement in the Georgia cases and he has cited none. The decisions I find are to the contrary.

Whether the pleadings were amendable at the time the amendment here was allowed subject to objection depends upon the determination of whether the case was still pending in the lower court when the amendment was offered, or whether the case had been terminated in the lower court. After this latter determination is made the application of the rule is very simple. If the case is pending the amendment is allowable. If the case is not pending in the lower court the amendment is improper.

In cases where the sustaining of a motion for summary judgment, or a general demurrer, or motion to dismiss, or motion for judgment on the pleadings, or a motion for directed verdict, or a motion for nonsuit at the close of plaintiff's evidence (now converted to a motion for directed verdict) all of which if sustained by the trial judge would terminate the case in the lower court, is appealed from and affirmed on appeal, no amendment can be filed before the remittitur is filed or after it is filed, as, in the first instance, the case is not then pending in the lower court, nor is it pending in the lower court after the remittitur is made the judgment of the lower court. If the *sustaining* of such a motion is *reversed* on appeal, no amendment can be filed until the judgment of the appellate court is made the judgment of the lower court, thus reinstating the case in the lower court. However, if, as in the present case, the lower court overrules such a motion, the case is left pending in the lower court during the appeal and does not cease

pending in the lower court during the appeal even after reversal, until the remittitur of the appellate court is made the judgment of the lower court.

The dissent seeks to distinguish the present case from those cited by the majority on the ground that the cases cited in the majority opinion happen to relate to cases of general demurrer and this case relates to summary judgment. In doing so, the dissent has missed the point entirely, that is, was the case still pending in the court below when the amendment was filed.

The dissent, then drawing the analogy between a motion for directed verdict and a motion for summary judgment, presents arguments which have nothing to do whatsoever with whether the case was pending in the court below at the time the amendment was offered. It may be well to note that at the present time the motion for nonsuit no longer exists, but instead a motion for direction of verdict may be made at the close of the plaintiff's evidence. While the nonsuit was in vogue (the sustaining of which would have terminated the case in the lower court just as the grant of a summary judgment by the lower court would have terminated the case here) the Supreme Court of this State applied the rule to cases where the denial of a nonsuit was reversed by the Supreme Court. See in this connection *Sullivan, Cabot & Co. v. Rome R. Co.*, 28 Ga. 29; *Fenn v. Seaboard A. L. R.*, 120 Ga. 664 (1) (48 SE 141).

2. In the present case the trial judge sustained a motion for judgment on the pleadings, which motion was made on the following grounds: "1. That judgment in favor of these defendants and against plaintiffs was rendered by the Supreme Court of Georgia in the above-styled case on September 27, 1971 in case no. 26546, *Summer-Minter & Assoc. v. Giordano,* 228 Ga. 86 (184 SE2d 152), and said judgment never having been reversed or set aside, plaintiffs cannot subsequently amend their pleadings. 2. That the amended complaint purports to allege a claim based upon the same facts, transactions and occurrences as were alleged in the original complaint and is, therefore, barred under the principles of former adjudication res judicata, and estoppel. 3. That the purported amendment is in direct violation of the procedural and substantive laws of Georgia."

A motion to dismiss the amended complaint and a motion to strike the amended complaint were expressly *not ruled upon* in the order sustaining the motion for judgment on the pleadings.

Neither of the grounds stated in the motion for judgment on the pleadings is a proper or sustainable ground of such a motion. While

the defense of failure to state a claim may be raised by a motion for judgment on the pleadings, no such ground is stated in the motion; nor is the motion made generally so that all proper grounds could be argued and considered. Neither can we consider the motion for judgment on the pleadings as a motion to dismiss or strike the amendment, as the trial judge expressly stated in his order he was not passing on these motions which were separately filed. The grounds not being such as are properly presented in a motion for judgment on the pleadings and which cannot be considered as a motion to strike or dismiss the amendment (which struck the entire complaint and substituted another) the trial court should be reversed, the amendment having been allowed subject to the objection.

Treating the motion for judgment on the pleadings for what it is, the only basis upon which the trial judge would be authorized to sustain the motion, would be that *the pleadings, the amended complaint and the answer* show the defendant was entitled to a judgment as a matter of law. No defense of former adjudication was filed. It follows, therefore, that the trial court erred in sustaining this motion upon unsustainable grounds. The dissents of Judges Hall and Stolz have gone beyond the questions properly presented by a motion for judgment on the pleadings, and have actually passed on questions as to the propriety of the allowance of the amendment and whether the petition as amended was subject to dismissal, which the trial judge expressly did not pass upon.

3. However, should I assume the merits of the amended and redrawn complaint to be properly before this court I would be unable to agree that the law of the case precludes proceeding with the present theory of the case as is made by the amendment. The original complaint was brought based upon a conspiracy to defraud the complainant formed among all the named defendants, and seeking to set aside a foreclosure sale, the defendants being H. F. Stubbs, Bob E. L. Pope, Summer-Minter & Associates, Inc. and Hugh Summer. The prayers were for setting aside the foreclosure sale, or damages actual, punitive and for attorney's fees. Summer-Minter & Associates, Inc. and Hugh Summer moved for a summary judgment and upon its denial they appealed to the Supreme Court, which reversed. By the amendment a new theory of recovery, not based upon conspiracy but based upon statements made by Summer individually and as agent for the corporation allegedly purposely made which prevented the complainant, the holder of a second mortgage, from being informed of a foreclosure

of the first mortgage. Did the Supreme Court decide this latter issue? It expressly did not do so. It decided the evidence did not show a conspiracy in the following language: "We have carefully reviewed all the evidence and there is not a microscopic scintilla of evidence that there existed a conspiracy between the defendants as to the foreclosure of the subject property and its purchase of Stubbs for the purpose of injury or damage to the appellees. There being no material issue as to the existence or nonexistence of a conspiracy, the court erred in denying the appellants' motion for a summary judgment on the appellees' complaint against the appellants." *Summer-Minter & Assoc. v. Giordano,* 228 Ga. App. 86, 90, supra. The Supreme Court also failed to pass upon the theory and issue now involved when it said (just preceding the ruling above quoted) and in regard to the testimony of one Hicks that H. Summer told Hicks, or led Hicks, not to tell complainant of the pending foreclosure the court said that "this evidence does not support or raise any issue as to a conspiracy. Even if it be conceded that Summer's purpose was to harm the Giordanos it was his act alone, and one person cannot be guilty of a conspiracy." Whether the Supreme Court should have ruled directly upon the question posed is not the question here, but the question here is the law of the case, and the decision of the Supreme Court makes no law of the case on that point. In my opinion, the amended complaint sets forth a claim against the defendants, unresolved by the previous appeal of the case based upon conspiracy.

HALL, Presiding Judge, dissenting. This case is illustrative of the extent this court has gone over the past few years to emasculate the remedy of summary judgment. If this ruling is allowed to stand, an appellate reversal of the denial of a motion for summary judgment has become an exercise in futility. The losing party will amend and be off on a new adventure under the "sporting theory" of justice.

In my opinion the trial court did not err in granting defendant's motion for judgment on the pleadings based upon the previous summary judgment rendered in favor of the appellee. I dissent to the basic premise upon which the majority opinion is grounded—the analogy of the old general demurrer to a motion for summary judgment. The analogy here is to the motion for directed verdict. "The trial court's function in ruling on a motion for summary judgment is analagous to the function it performs when ruling on a motion for directed verdict. The essence of both motions is that there is no genuine issue of material fact to be resolved by

the trior of the facts, and that the movant is entitled to judgment on the law applicable to the established facts." *Pike v. Stafford,* 111 Ga. App. 349 (141 SE2d 780); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178 (1) (129 SE2d 408); *One In All Corp. v. Fulton Nat. Bank,* 108 Ga. App. 142, 144 (132 SE2d 116); *Standard Accident Ins. Co. v. Ingalls Iron Works Co.,* 109 Ga. App. 574 (136 SE2d 505); *Dykes v. Hammock,* 116 Ga. App. 389 (157 SE2d 524); *McKnight v. Guffin,* 118 Ga. App. 168 (162 SE2d 743); *Chandler v. Gately,* 119 Ga. App. 513 (167 SE2d 697). "Functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict." 6 Moore's Federal Practice 2043, § 56.02[10].

Since the enactment of the CPA, both this court and the Supreme Court have held that we now operate under "notice pleading" and that "a petition should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Byrd v. Ford Motor Co.,* 118 Ga. App. 333 (163 SE2d 327); *Hunter v. A-1 Bonding Service,* 118 Ga. App. 498 (2) (164 SE2d 246); *Harper v. DeFreitas,* 117 Ga. App. 236 (1) (160 SE2d 260); *Bourn v. Herring,* 225 Ga. 67 (3) (166 SE2d 89). "The purpose of the Summary Judgment Act of 1959 [later incorporated into CPA] is to eliminate the necessity for a trial by jury where, giving the opposing party the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence, there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442).

Thus we see that at the time for the decision on the motion for summary judgment the pleader opposing the motion has every benefit and inference that can be derived from the pleadings and the evidence. While he is given all these advantages, he also has a corresponding duty to either put up or shut up at the hearing on the question of additional pleadings or evidence. The one opposing the motion at the time of the hearing must "present same at that time, for the very purpose of the Summary Judgment Act is to afford either party litigant to a judgment *forthwith* if the record shows there is not a genuine issue existing between the parties, but only after each party has had opportunity to make out his case, or establish his defense, as the case may be. The summary judgment granted in this case places the plaintiff in error in no different position from where a verdict by a jury, or a directed verdict by the

trial court would have placed him." *Studstill v. Aetna Casualty &c. Co.,* 101 Ga. App. 766, 768 (115 SE2d 374); *Scales v. Peevy,* 103 Ga. App. 42, 46 (118 SE2d 193); *Montgomery v. Pickle,* 108 Ga. App. 272 (3) (132 SE2d 818). He "had his choice of producing counter proof and thus make an issue of fact, or do nothing, that is, create no issue of fact and suffer judgment." *Crutcher v. Crawford Land Co.,* 220 Ga. 298, 304 (138 SE2d 580).

If it is too late after the hearing to amend or submit additional facts, it is axiomatic that it is too late after the appellate court has adjudicated that one party is entitled to a summary judgment. When the Supreme Court entered its judgment on September 27, 1971, the appellants had been given every right under the CPA, the merits of their case had been decided adversely and the mandate of that court cannot be changed by new pleading or affidavits. *Summer-Minter & Assoc. v. Giordano,* 228 Ga. 86 (184 SE2d 152).

"What judgment shall I dread?" A final one which is adverse on the merits.

I am authorized to state that Presiding Judge Eberhardt and Judge Stolz concur in this dissent.

STOLZ, Judge, concurring in the dissent. I concur in the dissent and offer the following for consideration in addition to the reasons expressed therein.

1. It is axiomatic and elementary that the plaintiffs' complaint is controlled by the Civil Practice Act (Ga. L. 1966, p. 609; Code Ann. Title 81A) and that the complaint is required only to give notice of the pleaders' claim. It is not necessary that a complaint set out a "cause of action," it is only required to "state a claim." It is equally axiomatic and elementary that a complaint is construed most strongly in favor of sustaining it, rather than most strongly against the pleader, as was the former rule. Until or unless the issues are narrowed for trial, a plaintiff can offer any evidence, under any theory that can be inferred from his complaint.

In the instant case, the plaintiffs' original complaint sought purely equitable relief in the form of an injunction (from in anywise alienating the property in question and any proceeding to confirm the sale). By amendment of Feb. 20, 1970, the plaintiffs, after a substantial allegation of facts, sought to add a party defendant and that the sale to Stubbs be set aside and annulled. On August 18, 1970, the plaintiffs again amended their complaint, alleging a conspiracy by all defendants for the purpose of defrauding the plaintiffs and the concealment from the plaintiffs of Pope's default and the subsequent foreclosure of the security

deed. The August 18, 1970 amendment also affirmatively alleged personal knowledge of the above by defendant Hugh Summer, a duty to inform plaintiff and active concealment of the information. This amendment, in addition to the relief previously sought, in the alternative prayed for (1) the difference between the fair market value of the land and the price for which Stubbs purchased same at the foreclosure sale, (2) a money judgment against all defendants, jointly and severally, for $165,000 plus interest from the date of foreclosure, and in addition to all other relief, (3) a joint and several judgment against all defendants for $250,000 punitive damages, plus reasonable attorney fees. On March 1, 1972, after the decision of the Supreme Court was rendered but before the remittitur was returned and made the judgment of the trial court, the plaintiffs again amended their complaint, striking the original complaint and all amendments thereto, and substituted a new complaint. The March 1, 1972, or "new complaint" set out essentially the same facts as contained in the original complaint and amendments, except that only Hugh Summer and Summer-Minter and Associates, Inc. are retained as defendants and damages are sought based on Summer's alleged false statement to Hicks that he (Summer) would advise the plaintiffs of the foreclosure, that it was unnecessary for him to do so, but that Summer then failed to so advise plaintiffs, resulting in the damages alleged in the amendment.

The gist of the amendment of August 18, 1970 was a conspiracy *by all defendants* (including Summer) to defraud the plaintiffs and the *concealment from the plaintiffs* of Pope's default and the subsequent foreclosure of the security deed. This amendment sought general money damages, plus punitive damages and attorney fees. Thus, the issue squarely before the Supreme Court was an actionable tort, and not the conspiracy. A conspiracy, in and of itself, amounts to no more than the development of a plan. If the plan remains only a plan and is not put in operation, it is not actionable. However, when the plan developed by the conspiracy is put into effect, the tort that is committed thereby and the resulting damages, are actionable. *Vandhitch v. Alverson*, 52 Ga. App. 308, 310 (1) (183 SE 105) and cit. The plaintiffs' amendment of August 18, 1970 certainly raised the issue of concealment of the foreclosure. The last amendment of March 1, 1972 did no more than particularize the method and manner of such concealment. The Supreme Court ruled on the issue as to any tortious act committed by the defendants when it decided that the plaintiffs

were not entitled to recover under any theory. The Supreme Court would most certainly have affirmed the denial of the defendants' motion for summary judgment if it had found that the defendants committed *any tortious* act against the plaintiffs, even though there was no conspiracy.

The allegations of the plaintiffs' amendment of March 1, 1972 present absolutely nothing new. The facts alleged were in evidence before the Supreme Court and were *specifically passed upon.* See *Summer-Minter & Assoc. v. Giordano,* 228 Ga. 86, 89 (184 SE2d 152). The judgment of the Supreme Court became the law of the case and this court is bound thereby.

2. There is yet another reason for this dissent. The law favors an end to litigation. If the majority rule is adopted, every reversal by an appellate court of a trial court's denial of a motion for summary judgment, could be made meaningless by an amendment to the pleadings prior to the judgment's being taken on the remittitur. If such is allowed, the result will become an empty game whereby lawyers further delay and impede the judicial process and further congest already overcrowded dockets. At some point, we must address ourselves to the responsible resolution of legal disputes, rather than have the judicial courtroom process continue to be a mere arena for attorneys to exhibit the prowess of their mental gymnastics. I believe this case brings this court to that point.

I am authorized to state that Presiding Judges Hall and Eberhardt concur in what is stated herein.